THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORA SELIM, | CASE NO. C22-1227-JCC |
| Plaintiff, | ORDER |
| v. | |
| FIVOS, INC., a Delaware Corporation, | |
| Defendant. | |

This matter comes before the Court on Plaintiff's partial motion for summary judgment on the issue of whether Egyptian labor law applies to her claim. (Dkt. No. 25.) Having thoroughly considered the briefing and the relevant record, and finding oral argument unnecessary, the Court hereby DENIES the motion for the reasons explained below.

## I. BACKGROUND

In 2009, Plaintiff Nora Selim was hired by Medstreaming, LLC., a Washington based subsidiary of Defendant Fivos, Inc., a Delaware corporation based in New Hampshire. (Dkt. No. 34 at 2.) At the time of her recruitment and hiring, Ms. Selim lived in Dubai, United Arab Emirates. (Dkt. No. 25 at 2.) Shortly thereafter, she moved to Cairo, Egypt, where she helped establish a local affiliate named "Medstreaming Egypt" ("MSE"). (*Id.*) MSE employed and paid all of Defendant's Egyptian employees, however, by her own admission Ms. Selim continued to

be employed and paid by Defendant. (*Id.*) Throughout her employment in Egypt, Ms. Selim reported directly to supervisors based in the United States, (*id.* at 3); she submitted a Washington address in her I-9 forms and verified her eligibility to work in the United States, (*id.*); she maintained her address in Washington for payroll purposes and filed income taxes from that address, (*id.* at 3); and she signed at least two contracts that included choice of law provisions selecting Washington law. (*Id.*) Moreover, Defendant paid federal and state-based employer deductions on Ms. Selim's payroll such as federal income tax, social security, Medicare, and Washington Paid Family and Medical Leave Insurance premiums. (*Id.*)

Defendant terminated Ms. Selim's employment in March 2022, following disputed claims about her performance. (Dkt. No. 25 at 2–3.) Ms. Selim alleges various labor violation claims, including unjustified termination, lack of proper notice, and unpaid wages. (*Id.* at 8–11.) At issue in the present motion is whether Egyptian or Washington law should apply to these claims.

## II.   DISCUSSION

### A.   Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts in the light most favorable to the nonmoving party and draw justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). The facts relied on must be admissible under rules governing admission of evidence generally. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542,

1    1555 (9th Cir. 1990). Ultimately, summary judgment is appropriate against a party who "fails to

2    make a showing sufficient to establish the existence of an element essential to that party's case, and

3    on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317,

4    322 (1986).

5         **B.    Discussion**

6         This Court, sitting in diversity, applies Washington's choice-of-law rules. *See Downing v.*

7    *Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001). Those rules provide that the Court

8    must engage in a conflict-of-laws analysis if an actual conflict exists between the laws or

9    interests of Washington and the laws or interests of another state. *Erwin v. Cotter Health*

10   *Centers*, 167 P.3d 1112, 1120 (Wash. 2007). "When the result of the issues is different under the

11   law of the two states, there is a real conflict." *Id*. When a conflict exists, and the parties do not

12   preselect the law to govern an issue, Washington's choice of law rules direct courts to determine

13   which state has the "most significant relationship" to a given issue, based on the factors outlined

14   in Restatement (Second) of Conflict of Laws § 6 (1971) (hereinafter "Restatement"). *See Singh*

15   *v. Edwards Lifesciences Corp.*, 210 P.3d 337, 340 (Wash. Ct. App. 2009) (citing *Johnson v.*

16   *Spider Staging Corp.*, 555 P.2d 997, 1000 (Wash. 1976)).

17        Both parties agree that the relevant laws in Washington and Egypt conflict. (Dkt. No. 34

18   at 12.) But they disagree on whether they preselected a specific forum's law to govern their

19   dispute. Defendant claims that it selected Washington law based on choice of law provisions

20   found in the "Confidentiality and Inventions Assignment" and "Non-Compete and Non-

21   Solicitation" agreements that Ms. Selim was required to sign in 2015. (Dkt. No. 44 at 10.)

22   Although neither of these contracts are directly at issue here, they indicate the expectations that

23   Washington would govern the parties' disputes. This is persuasive given the lack of any

24   contradictory provisions in any other agreements between the parties that indicate Egyptian law

25   should apply. *See Nelson v. Kaanapali Properties*, 578 P.2d 1319, 1321 (1978).

26        However, Ms. Selim rightfully notes that these choice of law provisions do not directly

govern the claims at issue, because they were limited in scope to their respective agreements. Accordingly, although they are persuasive, they are not dispositive. To reach a conclusion, the Court must determine whether Washington or Egypt has a more significant relationship to Ms. Selim's claims based on the following factors: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Singh*, 210 P.3d at 340 (2009) (citing *Johnson*, 555 P.2d 997, 1000). The "approach is not merely to count contacts, but rather to consider which contacts are most significant and to determine where these contacts are found." *Id.*

Ms. Selim's claims all relate to the termination of her employment. (Dkt. No. 25 at 8.) Although Ms. Selim worked in Egypt, the decisions leading up to her termination, and the alleged violations that occurred in tandem with that decision, were based entirely on conduct that occurred in the United States. (Dkt. No. 34 at 13.) This is where Defendant is based, and where it made the decision to deny Ms. Selim's severance, holiday pay, and other compensation. (*Id*.) Therefore, the Court finds that the alleged injury occurred and was caused to occur by decisioned made in the United States. (*Id*.)

The next factors—the domicile, residence, nationality, place of incorporation and place of business of the parties, all weigh in favor of Washington. Although Ms. Selim lived in Egypt, she filed I-9 Forms and tax returns in the United States indicating that she was a Washington resident. (*Id*.) Moreover, she received directions, supervision, payment, and finally notice of termination, from the United States. (*Id*. at 14.) This is consistent with Ms. Selim's own concession that she was employed by a United States company, not its Egyptian affiliate. And as previously stated, both Defendant and its subsidiary are Washington residents. Accordingly, the Court finds that the factors relevant to the "most significant relationship" test weigh in favor of Washington.

1    Ms. Selim concedes that the "relevant contacts are Egypt and Washington State," (Dkt.

2  No. 25 at 12.) However, she argues in a brief conclusory fashion that Egypt has "the more

3  significant relationship to claims in dispute." (*Id*. at 13.) In support, she cites to various Egyptian

4  labor law sources to argue it is in Egypt's interest to govern labor disputes that occur in its

5  territory. (*Id*. at 13–15.) Even if this were true, it ignores the relevant factors outlined in *Singh*,

6  and the fact that the United States in general, and Washington in particular, have a strong interest

7  in regulating employers' conduct towards extraterritorial employees. *Sampson v. Knight*

8  *Transportation Inc.*, 2018 WL 2984825, at slip op. 6 (W.D. Wash. 2018.) To rule otherwise

9  would potentially deprive extraterritorial workers from employment protections. Thus, although

10  the Court concludes that some aspects of the injury may have occurred in Egypt, due to

11  Washington's interest in protecting employees from employment related violations, the public

12  policy factor weighs in favor of Washington.

13    Accordingly, the Court finds that Washington law has the most significant relationship to

14  Ms. Selim's claim. *See Singh*, 210 P.3d at 340–41.

15  **III.    CONCLUSION**

16    For the foregoing reasons, Plaintiff's motion for partial summary judgment (Dkt. No. 25)

17  is DENIED. The Court concludes that Washington law governs Plaintiff's claims.

18    DATED this 2nd day of May 2023.

19

20

21

22

23    _____

24    John C. Coughenour
      UNITED STATES DISTRICT JUDGE

25

26